**Joseph F. TINGHITELLA,**
**Petitioner-Appellant,**

v.

**STATE OF CALIFORNIA,**
**Respondent-Appellee.**

No. 82–5832.

United States Court of Appeals,
Ninth Circuit.

Submitted March 10, 1983.

Decided Oct. 12, 1983.

Donald F. Roeschke, Los Angeles, Cal., for respondent-appellee.

Joseph Francis Tinghitella, Huntsville, Tex., for petitioner-appellant.

Before FLETCHER and NELSON, Circuit Judges, and THOMPSON,* District Judge.

* Honorable Bruce R. Thompson, Senior United States District Judge, District of Nevada, sitting by designation.

PER CURIAM:

Petitioner Joseph Tinghitella appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Tinghitella asserts that California's refusal to return him from Texas for sentencing on a California conviction violates the provisions of the Interstate Agreement on Detainers (IAD),[1] and his right to a speedy trial. Finding no merit in either contention, we affirm.

On March 20, 1975, a California jury found Tinghitella guilty of assault with a deadly weapon. With Tinghitella and his counsel present, the court set April 10, 1975 as the date for sentencing. Tinghitella was ordered to appear on that date and was released on bail. Following his release, Tinghitella fled California and failed to appear for the sentencing proceeding. As a result, his bail was forfeited and a warrant was issued for his arrest.

Tinghitella's whereabouts were unknown to California until 1979. At that time, it was learned that he had been convicted of an offense in Texas and was serving a forty-five year sentence there. California placed a detainer on Tinghitella in Texas in June of 1979. In early September of that year, Tinghitella caused California to be served with notice under the IAD demanding his return to California for sentencing. California refused to comply with his demand to be returned, but was willing to

sentence him *in absentia*. Tinghitella throughout these proceedings has declined sentencing *in absentia*, insisting that he has the right to be present.

On January 21, 1980, Tinghitella petitioned the California Court of Appeal for a writ of mandamus to compel his return to California for sentencing.[2] That court denied his petition. Tinghitella sought review of the denial by the California Supreme Court and was again denied relief. He then filed this petition for a writ of habeas corpus claiming, as he did in the state courts, that California's conduct violated the IAD and the speedy trial guarantee of the Sixth Amendment as incorporated by the Fourteenth Amendment.[3] The district court denied his petition.

Relief under 28 U.S.C. § 2254 is not only available for violations of constitutional rights, but also for violations of the laws or treaties of the United States.[4] The IAD is a congressionally sanctioned interstate compact and is thus a law of the United States, whose interpretation presents a federal question. *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981); *Brown v. Wolff,* 706 F.2d 902, 904–05 (9th Cir.1983); *Bush v. Muncy,* 659 F.2d 402 (4th Cir.1981); *United States ex rel. Esola v. Groomes,* 520 F.2d 830 (3d Cir.1975). While it is true that a prisoner is only entitled to habeas corpus relief for

---

1. Both Texas, the state in which petitioner is incarcerated, and California, the state which has issued a detainer against him, are parties to the IAD. *See* Tex.Code Crim.Proc.Ann. art. 51.14 (Vernon); Cal.Penal Code §§ 1389–1389.8 (West).

2. Tinghitella did not directly appeal his California conviction because, under California law, only a final judgment of conviction can be appealed and, by itself, a verdict is not considered a final judgment. Cal.Penal Code § 1237 (West); *People v. Ashley,* 42 Cal.2d 246, 267 P.2d 271 (1954).

   The U.S. Magistrate who initially supervised this case should be commended for his persistence in developing an accurate record of petitioner's exhaustion of state remedies.

3. The district court had habeas corpus jurisdiction because the California detainer placed the

petitioner in the constructive custody of California although he was physically in custody in Texas. *Rose v. Morris,* 619 F.2d 42 (9th Cir. 1980). This concept evolved from *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), which overruled *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), and thus obviated much tortuous reasoning by the lower courts. *Cf. United States ex rel. White v. Hocker,* 306 F.Supp. 485 (D.Nev.1969).

4. 28 U.S.C. § 2254(a) provides:

   The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

violations of federal law which constitute fundamental defects, *Hitchcock v. United States,* 580 F.2d 964 (9th Cir.1978), a violation of the time provisions of the IAD is a cognizable defect. *See Cody v. Morris,* 623 F.2d 101 (9th Cir.1980).

The IAD provides that where a prisoner incarcerated in one state makes a proper request for trial of "any untried indictment" pending in another state "on the basis of which a detainer has been lodged against the prisoner," the prisoner must be "brought to trial" within 180 days of the request for "final disposition" of the indictment. IAD, art. III(a). Failure to try the prisoner within 180 days requires dismissal with prejudice. *Id.,* art. V(c). The defendant argues, in effect, that "trial" and "final disposition" encompass sentencing. He thus concludes that since he remains unsentenced on the California indictment for assault, California's detainer is pending on a criminal charge that remains "untried."

Some courts have stated that the IAD does not apply to detainers lodged against prisoners who have been convicted but not sentenced. *See People v. Mahan,* 111 Cal. App.3d 28, 33–34, 168 Cal.Rptr. 428, 430–31 (1980) (dictum) (IAD would not apply to detainer filed for purposes solely of gaining return of defendant for sentencing); *People v. Castoe,* 86 Cal.App.3d 484, 488–90, 150 Cal.Rptr. 237, 238–40 (1978) (dictum) (stating that IAD is inapplicable to request for sentencing, yet no indication in record that detainer had ever been lodged). We do not find the reasoning in these cases to compel the same result here.

■ The cases place great emphasis on the agreement's repeated references to "untried indictments." *See Mahan,* 111 Cal. App.3d at 34, 168 Cal.Rptr. at 431; *Castoe,* 86 Cal.App.3d at 488–89, 150 Cal.Rptr. at 239–40. It is unclear, however, why this should compel the conclusion that "trial" stops with verdict, short of sentencing. The cases do not address the fact that the term "trial" in the speedy trial clause of the Sixth Amendment to the United States Constitution has been construed to include sentencing. *See, e.g., Walsh v. United States,* 423 F.2d 687, 688 (9th Cir.1970). Nor do they gainsay that the central policy foundations of the IAD support a broad construction of the term "trial,"[5] or that the IAD itself provides that it *"shall* be liberally construed so as to effectuate its purposes." IAD, art. IX (emphasis added). For these reasons, we conclude that the terms "trial" and "final disposition" as used in the IAD encompass sentencing and, therefore, that the IAD imposes an obligation on California to sentence a Texas prisoner in timely fashion where California has secured the conviction of the prisoner in California but he has not been sentenced before his incarceration in Texas on a Texas conviction.

■ Nevertheless, by requesting only his return to California for sentencing and not imposition of a sentence whether or not he is present, Tinghitella has not yet petitioned

5. The IAD avers that the party states have concluded that outstanding detainers based on untried indictments "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation" and that the central purpose of the agreement is "to encourage the expeditious and orderly disposition of such charges." IAD, art. I. Early resolution of detainers was thought to enhance rehabilitation and to ensure fair treatment of all prisoners, since prior to the IAD, a prisoner with a detainer pending against him was often prevented from focusing on a post-imprisonment return to society or received less favorable treatment than others.

Both the rehabilitative and fair treatment purposes of the IAD would be better effectuated by construing trial to include sentencing. A prisoner with foreknowledge of a time certain for imprisonment in the receiving state (here, California) presumably will more easily undergo rehabilitation than one with knowledge merely of the range of possible sentences. Moreover, treatment of prisoners in the sending state (Texas), including eligibility for "trusty" status and for work-furlough and weekend-furlough, apparently depends on the period of sentence eventually to be served in the receiving state (California).

The facts of this case demonstrate another reason why the IAD should be construed to apply to sentencing. The petitioner cannot appeal from his California conviction until he has been sentenced. A reversal of that conviction on appeal would significantly affect petitioner's rehabilitation in Texas.

for the only relief that could conceivably be accorded him under the IAD. The agreement explicitly requires that the prisoner "cause to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment." IAD, art. III(a). The notice and request must be delivered through the official having custody of the prisoner. *Id.,* art. III(b). These formal requirements must be met before the timely trial provisions of the IAD come into play. *See People v. Wilson,* 69 Cal.App.3d 631, 636, 138 Cal.Rptr. 259, 261 (1977).

■ In this case, Tinghitella caused a request for his return to California for sentencing to be delivered to the California authorities. This was not a "request for a final disposition to be made of the indictment" within the terms of the IAD. Under California law, it is settled that a defendant absconding after learning the jury's verdict has waived his common-law right to be present in person for pronouncement of sentence. *In re Jimenez,* 269 Cal.App.2d 621, 622, 75 Cal.Rptr. 152, 153 (1969); *People v. Brown,* 102 Cal.App.2d 60, 61, 226 P.2d 609, 610 (1951). Thus, having fled the state during his California trial, Tinghitella had no right under California law to be present for sentencing. Nor does the IAD, by requiring that a prisoner be "brought to trial within 180 days" of his request, *see* IAD, art. III(a), confer upon a prisoner any greater right to presence than he has under the law of the receiving state. Where neither state nor federal law imposes a requirement of presence, the IAD would afford only temporal, not geographical, protection. Consequently, Tinghitella's request in 1979 that he be returned to California for sentencing was a request the fulfillment of which the IAD does not require. Under the circumstances of this case, Tinghitella at most has a right under the

IAD to be sentenced in timely fashion after a request for sentencing in accordance with the procedures prescribed by California law applicable to these circumstances.[6]

■ Holding that Tinghitella has not yet made a proper request to the California authorities under the IAD, however, does not close the inquiry. Petitioner has a constitutional right under the Sixth Amendment and the due process clause of the Fourteenth Amendment to have the California prosecution completed by imposition of sentence within a reasonable time. *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). In this landmark case, the Supreme Court articulated four basic reasons why fundamental justice requires the prompt disposition of detainers, two of them being:

> First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.

*Id.* at 378, 89 S.Ct. at 577.

■ The district court considered Tinghitella's speedy trial claim but rejected it. The Supreme Court has not expressly decided whether the right to a speedy trial encompasses the sentence phase of a criminal trial. In *Pollard v. United States,* 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), the court was presented with the issue and assumed *arguendo* that "the sentence is part of the trial for purposes of the Sixth Amendment." *Id.* at 361, 77 S.Ct. at 485. Following the assumption in *Pollard,* this circuit and others have treated sentencing as included within the speedy trial guaran-

---

**6.** Presumably, if and when petitioner makes a proper unconditional request for final disposition of his case, the California authorities will initiate proceedings conformably with Cal.Penal Code § 1193 (West). Those proceedings may involve the appointment of counsel for petitioner, and, ultimately, will result in the timely imposition of sentence, either with petitioner present, or absent, as the case may be.

tee. *United States v. Merrival,* 600 F.2d 717 (8th Cir.1979); *United States v. Campisi,* 583 F.2d 692 (3d Cir.1978); *United States v. Reese,* 568 F.2d 1246 (6th Cir.1977); *Juarez-Casares v. United States,* 496 F.2d 190 (5th Cir.1974); *Walsh v. United States,* 423 F.2d 687 (9th Cir.1970). Even were we to conclude that sentencing is included within the speedy trial guarantee, the constitutional duty of the state to make a diligent, good-faith effort to sentence, and thus petitioner's right to be sentenced, arises only upon the petitioner's demand. *See Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). Moreover, whatever its extent, the speedy trial guarantee of the Sixth Amendment does not carry with it a federal constitutional right to be present for trial where the defendant has voluntarily failed to appear on the date set. *See Taylor v. United States,* 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) (waiver of presence at trial); *United States v. Marotta,* 518 F.2d 681, 683–84 (9th Cir.1975) (same).

In this case, despite petitioner's vigorous efforts to be *returned* for sentencing in California, the record does not show that he ever requested to be sentenced in California in accordance with California's applicable procedures. *See* Cal.Penal Code § 1193 (West). In the absence of such a request, we cannot say that Tinghitella has made a request on the California prosecuting authorities sufficient to invoke the speedy trial right espoused in *Hooey.*

For the reasons stated, the judgment denying the petition for a writ of habeas corpus is affirmed.

AFFIRMED.