**UNITED STATES of America, Plaintiff,**

**v.**

**Vernon Klaire COFFMAN, Defendant.**

**Crim. A. Nos. 85–10045–01, 88–3434–T.**

United States District Court,
D. Kansas.

May 18, 1989.

Emily Metzger, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

Vernon Klaire Coffmax, pro se.

## OPINION AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's second motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dk. No. 34) and the defendant's amended 2255 motion. (Dk. No. 39). The defendant's first 2255 motion (Dk. No. 26) was denied by this court (Dk. No. 29). The court ordered the United States to file an answer to the second 2255 motion. The United States asserted in its answer that the second motion should be dismissed as a successive motion (Dk. No. 37). The court issued an order to show cause why the second motion should not be dismissed as a successive motion (Dk. No. 41). The defendant filed a response to the show cause order (Dk. No. 45). The court has considered the response and is now prepared to rule.

In his response to the show cause order, defendant stated that he wishes to withdraw all claims for relief except for his claims (1) alleging that his conviction and sentence were obtained in violation of the Interstate Agreement on Detainers Act (IAD), 18 U.S.C. App. art. IV(e), and (2) alleging ineffective assistance of counsel based on counsel's failure to raise the alleged violation of the IAD. The court will allow the defendant to withdraw his other claims for relief and will address the two remaining claims.

The relevant facts are as follows. Defendant was indicted by the grand jury in July 1985. As of August 2, 1985, defendant was incarcerated in the Pratt County Jail, apparently serving a sentence for a misdemeanor conviction. On that date, the United States Marshal caused a detainer to be sent to the Pratt County Sheriff advising of the outstanding federal charges. In September 1985, apparently upon his release from the Pratt County Jail, defendant appeared before the United States Magistrate and was released on bond. Defense counsel requested and received several continuances of the trial. Between September 1985 and September 1986, the defendant apparently pleaded guilty to a state crime and was incarcerated in the Kansas State Industrial Reformatory (KSIR) in Hutchinson, Kansas. The United States Marshal brought the defendant from KSIR to this court by means of a writ of habeas corpus ad prosequendum on September 22, 1986. Defendant pleaded guilty to two of four counts of the indictment and was returned to KSIR the same day. On November 20, 1986, the defendant was brought from KSIR to this court to be sentenced and was returned to KSIR on the same day.

■ Defendant's claims are based on the anti-shuttling provision of the IAD, which provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. App. art. IV(e). The IAD requires a court to dismiss an indictment when, after a detainer is lodged with state officials, the United States Marshal pro-

cures the presence of the defendant from state custody, brings the defendant to the United States courthouse for arraignments and hearings, and returns the defendant to state custody without trial on the federal charges. *United States v. Schrum*, 504 F.Supp. 23 (D.Kan.1980), *aff'd per curiam*, 638 F.2d 214 (10th Cir.1981). Defendant alleges that the IAD was violated when he was returned to KSIR after he pleaded guilty but before he was sentenced.

## I. VIOLATION OF THE IAD

### A. *Availability of Relief under Section 2255*

 Because the rights created by the IAD are statutory, not fundamental, constitutional, or jurisdictional in nature, violations of the IAD are not grounds for a collateral attack on a federal conviction and sentence under section 2255, absent special circumstances. *Greathouse v. United States*, 655 F.2d 1032, 1034 (10th Cir.1981), *cert. denied*, 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 469 (1982). To justify relief under section 2255, the defendant must show some actual prejudice caused by the transfers between state and federal custody. Actual prejudice may arise in preparing a defense to the federal charges or in the prisoner's status at the state prison facility. *See Huff v. United States*, 599 F.2d 860, 863 (8th Cir.), *cert. denied*, 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979). In the present case, the defendant has not alleged how he was harmed by the alleged violation of the IAD. Since the defendant had been obtained from state custody on a writ, he was not bondable. Therefore, he is entitled to no relief under section 2255.

### B. *Existence of a Violation of the IAD*

 Additionally, the court holds that no violation of the IAD occurred. The Tenth Circuit does not appear to have addressed the issue before this court. The Ninth Circuit has held that the speedy trial provisions of the IAD apply to sentencing. *See Tinghitella v. State of California*, 718 F.2d 308 (9th Cir.1983) (per curiam). One district court has held that the anti-shuttling provision of the IAD is violated when a prisoner is returned to the original place of confinement after a plea of guilty but before sentencing. *Walker v. King*, 448 F.Supp. 580 (S.D.N.Y.1978). Under the reasoning of these courts, this court would be required to dismiss the charges with prejudice, despite the defendant's guilty plea, because the defendant was returned to KSIR after his plea of guilty but before sentencing on the federal charges.

The court feels that this case does not present the type of abuse of detainers which the IAD was intended to cure. The Ninth Circuit discussed the purposes of the IAD:

> The IAD avers that the party states have concluded that outstanding detainers based on untried indictments "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation" and that the central purpose of the agreement is "to encourage the expeditious and orderly disposition of such charges." IAD, art. I. Early resolution of detainers was thought to enhance rehabilitation and to ensure fair treatment of all prisoners, since prior to the IAD, a prisoner with a detainer pending against him was often prevented from focusing on a post-imprisonment return to society or received less favorable treatment than others.

*Tinghitella*, 718 F.2d at 311 n. 5. The Ninth Circuit added that both the rehabilitative and fair treatment purposes of the IAD would be better effectuated by construing the word "trial" as used in the IAD to include sentencing. *Id.*

This court disagrees. The defendant's participation in rehabilitation programs at KSIR was interrupted for a short period of time on two days when the defendant was transported the short distance from KSIR to the courthouse in Wichita to plead guilty and be sentenced. If the defendant had been kept in federal custody during the two months between his plea of guilty and his sentencing, the defendant's rehabilitation would have been greatly interrupted. Also, if he had not been returned to state custody, he would have remained in federal custody in a contract county jail in Wichita

or the vicinity. Further, the defendant was aware of the potential sentences on the charges to which he had pleaded guilty, thereby alleviating that aspect of the uncertainty regarding unresolved charges. The court finds that no violation of the IAD occurred.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant alleges that he was denied effective assistance of counsel because his counsel failed to raise the alleged IAD violation. Defendant alleges that if counsel had raised the matter, the court would have dismissed the charges against him with prejudice. The Tenth Circuit has recently summarized the standards governing a claim of ineffective assistance of counsel:

> In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the two elements that must be established to show whether counsel's assistance was so defective as to require the reversal of a conviction. First, it must be shown that counsel committed serious errors so as to not be functioning as the "counsel" provided by the Sixth Amendment. To determine whether counsel's performance comported with the Sixth Amendment, the inquiry is whether the attorney's conduct is reasonable in light of all the circumstances of the case. This is an objective standard based on whether the reasonable defense attorney would act in the same manner as the defense counsel in the situation being analyzed.
>
> Second, it must be shown that counsel's performance was prejudicial to the defense. "[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Rantz*, 862 F.2d 808, 810–11 (1988) (citations omitted), *cert. denied*, — U.S. —, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989).

In the present case, defendant is unable to meet either element. Counsel did not err by failing to assert a violation of the IAD and defendant suffered no prejudice from counsel's performance since the IAD was not violated. Counsel's failure to raise a nonmeritorious defense could not have caused the defendant any harm. Had counsel raised this issue, the court would have rejected the defense.

IT IS BY THE COURT THEREFORE ORDERED that the defendant's motion to vacate, set aside, or correct sentence is hereby denied.